■ In the Matter of GORDON L., Appellant, v MICHELLE M., Respondent. (Proceeding No. 1.) In the Matter of TANYA N., a Person Alleged to be in Need of Supervision, Respondent. MICHELLE M., Respondent; GORDON L., Appellant. (Proceeding No. 2.) [745 NYS2d 105] —Cardona, P.J. Appeals (1) from an order of the Family Court of Warren County (Breen, J.), entered July 31, 2001, which dismissed petitioner's application, in proceeding No. 1 pursuant to Family Court Act article 6, for custody of the parties' child, and (2) from an order of said court, entered October 3, 2001, which granted petitioner's application, in proceeding No. 2 pursuant to Family Court article 7, to adjudicate respondent a person in need of supervision.

The parties in proceeding No. 1, petitioner Gordon L. (hereinafter the father) and Michelle M. (hereinafter the mother), are the biological parents of respondent Tanya N. (born in 1986). Tanya was conceived when the father was 23 years old and the mother was 14 years old. The father did not learn of Tanya's birth until 1993 and had his first contact with her in 2000. On January 10, 2001, alleging that Tanya was being physically abused, the father, pursuant to Family Court Act article 6, filed an application seeking custody of Tanya. Upon the consent of the parties and the child's Law Guardian, Family Court awarded temporary joint custody of Tanya to both parties, placing physical custody with the mother and granting alternate weekend custody to the father. The court also ordered home investigations, disclosure of child protective services' reports maintained by the Warren County Department of Social Services (hereinafter DSS) to the court, and psychiatric examinations of the parties and Tanya.

On May 4, 2001, following a report that the father was staying in the mother's home and sleeping in the same bedroom as Tanya, Family Court ordered DSS to commence a sexual abuse and/or neglect investigation involving both parents (*see,* Family Ct Act § 1034), suspended the father's physical custody rights and ordered him not to stay in the mother's home. However, the father made an emergency application for modification of custody on May 25, 2001, when it was learned that Tanya had been raped by the husband of the mother's friend. The application was denied.

On June 5, 2001, Tanya ran away from home prompting the mother to file a petition (proceeding No. 2) seeking to have her adjudicated a person in need of supervision (hereinafter PINS; *see,* Family Ct Act § 712). On June 12, 2001, following an admission to the allegations of the petition, Family Court remanded Tanya to detention and directed a physical examination and an inpatient mental health evaluation.

Family Court held a dispositional hearing on the PINS petition on July 26, 2001 and, upon conclusion of the hearing, adjudicated Tanya a PINS. Finding that she required intensive psychiatric treatment and close supervision which neither the father nor the mother could provide, the court placed her in the custody of DSS for a period of one year in a residential treatment facility. Having ordered Tanya into DSS custody, the court, on its own motion, dismissed the father's custody petition. The father appeals from that portion of the dispositional order in the PINS proceeding which placed Tanya in DSS custody* and from the order dismissing his custody petition.

Initially, we find no merit to the father's argument that Family Court erred when it failed to find "extraordinary circumstances" as a prerequisite to placing Tanya in DSS custody. In *Matter of Bennett v Jeffreys* (40 NY2d 543, 544), the Court of Appeals held that absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances, the State or a court may not deprive a biological parent of the custody of his or her child. We note that when the Court articulated the extraordinary circumstances standard in *Matter of Bennett v Jeffreys (supra)*, it did so in the context of an "unsupervised private placement" (*id.* at 545). Since PINS proceedings are governed by Family Court Act article 7 which specifically prescribes the possible dispositions (*see,* Family Ct

---

\* Although the August 7, 2001 notice of appeal is premature with respect to the PINS dispositional order entered October 3, 2001, we, nevertheless, deem it valid (*see,* Family Ct Act § 1118; CPLR 5520 [c]).

Act § 754), including the disposition utilized here (see, Family Ct Act § 756 [a] [i]), Family Court was authorized to make that disposition.

Next, we find that Family Court did not abuse its discretion when it placed Tanya with DSS instead of in the father's custody despite his testimony that he could arrange for her to receive inpatient treatment in New Hampshire where he resides. Evidence consisting of the detention reports, child protective services reports, reports by licensed psychologist Bernice Gottschalk and the court-appointed psychiatrist, John Meyers, together with the hearing testimony, reveals Tanya to be a deeply troubled child who is in need of intensive psychiatric treatment that can only be provided in a residential treatment facility. Notably, Tanya has indicated to caseworkers and mental health professionals that she communicates with her deceased sister, talks to animals in their language, has had a sexual relationship with the father and fantasizes about carrying his child and about their future life together as "husband and wife." Moreover, several letters written by the father to Tanya while she was in detention suggest the existence of an inappropriate level of affection for his daughter. His disclosures that he has shared the same bed with her after learning that she had been sexually abused by another man indicates, as Meyers observed, that he has "little recognition of the concept of boundaries" and should be further evaluated to determine if he poses a "risk[ ] as a sexual perpetrator with [Tanya]." Finally, we note that the father had only known Tanya for approximately seven months at the time of the hearing. Under the circumstances, we find placement with DSS appropriate.

Turning to the father's contention that his due process rights were violated when Family Court dismissed his custody petition after placing Tanya in the custody of DSS, we point out that he failed to preserve this issue for our review by voicing his objection to it during the proceeding (see, Family Ct Act § 1118; CPLR 5501 [a] [3]; Matter of Brian QQ., 166 AD2d 749). In any event, we find no merit to this argument because he testified on his own behalf and presented a witness in support of his request for custody. It should be noted that this record does not indicate that the father was denied the right to present other witnesses. Thus, the record shows that he was accorded a full and fair opportunity to be heard, "the full measure of any due process owed" (Matter of Brian QQ., supra at 750).

Mercure, Peters, Carpinello and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.