■ In the Matter of TELSA Z., and Another, Children Alleged to be Abused and Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DENISE Z., Appellant. (And Another Related Proceeding.) [923 NYS2d 768]—

Spain, J.P. Appeals (1) from an order of the Family Court of Clinton County (McGill, J.), entered August 17, 2010, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's children to be neglected, and (2) from two orders of said court, entered August 24, 2010, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10-A, to extend the placement of respondent's children.

Respondent (hereinafter the mother) and her husband, Rickey Z. (hereinafter the father), had two daughters, born in 2000 and 2001. In October 2008, petitioner commenced a neglect proceeding against the father alleging that he had sexually abused the older child, then eight years old, and derivatively neglected the younger child. This Court affirmed Family Court's determina-

tion, after a fact-finding hearing, sustaining the allegations and the court's dispositional order precluding all contact with them (*Matter of Telsa Z. [Rickey Z.—Denise Z.]*, 71 AD3d 1246 [2010]).[1] The father surrendered his parental rights as to both girls in June 2010. While the girls initially remained with the mother, they were placed together in therapeutic foster care in January 2009, after the older child disclosed that her mother had witnessed some of the abuse and threatened her if she told anyone.

A neglect petition was filed against the mother in March 2010 alleging that she failed to protect the older child from the father's sexual abuse despite her awareness of it, and had derivately neglected the younger child. After a fact-finding hearing, Family Court sustained the allegations, and this Court affirmed (*Matter of Telsa Z. [Denise Z.]*, 81 AD3d 1130 [2011]). Following a combined permanency and dispositional hearing in July 2010, Family Court issued orders continuing the girls' placement with petitioner with a permanency goal of reunification with the mother and denying her request for visitation. The mother now appeals from the dispositional and permanency orders[2] as to both girls.

Initially, the mother did not preserve for our review the claim, raised for the first time on appeal, that holding the dispositional and permanency hearings at the same time operated to deprive her of due process (*see* Family Ct Act § 1118; CPLR 5501 [a] [3]; *Matter of Gordon L. v Michelle M.*, 296 AD2d 628, 630 [2002]). In any event, the record demonstrates that she was afforded "a full and fair opportunity to be heard, the full measure of any due process owed" (*Matter of Gordon L. v Michelle M.*, 296 AD2d at 630 [internal quotation marks and citation omitted]). Having issued an order sustaining the abuse and neglect allegations in the petition against the mother (*see* Family Ct Act § 1051 [a]), Family Court properly proceeded, on notice, to the dispositional hearing (*see* Family Ct Act § 1047), at which the mother fully participated, represented by counsel; she was afforded every opportunity to cross-examine witnesses, to present evidence and to be heard on the issue of what disposition,

---

**1.** We also affirmed findings that he willfully violated orders of protection in favor of the girls (*Matter of Telsa Z. [Rickey Z.]*, 75 AD3d 776 [2010) and an order continuing their placement with petitioner and prohibiting contact with them (*Matter of Telsa Z. [Rickey Z.]*, 74 AD3d 1434 [2010]).

**2.** We have been advised that a new permanency order was issued as to the older child on February 24, 2011, rendering moot the appeal from the August 2010 permanency order as to her (*see Matter of Lauren L. [Cassi M.]*, 79 AD3d 1172 [2010]). However, since the mother has also raised a due process challenge to that order, we will address it on the merits.

including visitation, would be in the girls' best interests (*see* Family Ct Act §§ 1045, 1052). We discern no error or prejudice to the mother in the court's simultaneous, noticed consideration of the mandatory permanency hearing (*see* Family Ct Act § 1089). The "material and relevant" evidentiary standard governed both hearings (Family Ct Act § 1046 [c]; *see* Family Ct Act § 1089 [d]), at which the best interests and safety of the children are the paramount consideration (*see* Family Ct Act § 1089 [d]; §§ 1052, 1055; *Matter of Victoria X.*, 34 AD3d 1117, 1118 [2006], *lv denied* 8 NY3d 806 [2007]).

On the merits, Family Court's determination to continue placement of the girls with petitioner and deny the mother visitation is supported by overwhelming record evidence that this placement is consistent with their best interests (*see Matter of Brandon DD. [Jessica EE.]*, 75 AD3d 815, 816-817 [2010]; *Matter of Victoria X.*, 34 AD3d at 1118). Notably, the evidence at the mother's fact-finding hearing established that the father had repeatedly sexually abused the older child, and that "the mother was aware of it, witnessed it and instructed the child not to tell anyone" (81 AD3d at 1133). The evidence at the dispositional hearing established that the mother underwent a psychological evaluation in early 2009, several months after her daughters were removed, at which extensive services and therapy were recommended and thereafter repeatedly made available to her.

The psychological evaluations (in 2009 and 2010) and documentary evidence, including the permanency hearing reports, combined with the testimony of the mother's mental health clinician, the caseworkers assigned to the mother and the social worker assigned to the older child, fully support Family Court's dispositional conclusion that she "has failed to avail herself of [the recommended] services" and "has not inquired about her children or their progress." Indeed, the record supports the permanency hearing report conclusion that the mother had made "no progress" in addressing the many problems necessitating their removal. She failed to attend recommended psychotherapy or mental health counseling beyond the initial intake interview, refused to attend a sex offender assessment[3] and other services, and rejected advice to retake parenting

---

**3.** In 1994 in Saratoga County, long before these daughters were born, the mother admitted neglect of two other daughters from previous relationships after allowing her then-boyfriend access to the girls despite knowledge that he had sexually abused one of them, and she subsequently willfully violated court orders by leaving those girls with another abuser. They were removed, and the mother later surrendered her parental rights to them and admitted neglect of a third child who was placed in foster care (*see* 81 AD3d at 1133).

classes and a therapy and educational program for non-offending parents of sexually abused children.

As recently as the month prior to the dispositional hearing, the mother continued to doubt whether the older child had been sexually abused by the father, with whom the mother had stayed and helped in recent weeks. While she minimized her ongoing relationship with the father and claimed that he needed her help due to his medical condition, it is clear that she has not severed her contacts with and dependence on him and fails to genuinely comprehend the harm he caused or her role in it. Further, she is unemployed, living on Social Security disability benefits and staying in a house with no electricity or running water, which she conceded was unsafe for children (and where the father had been living just weeks earlier before apparently returning to a rehabilitation facility).

The testimony also establishes that the older child remains a "child in crisis," unstable, with significant behavioral and psychiatric problems requiring repeated hospitalizations, in the months prior to the hearing, for extreme and unsafe behavior and suicidal ideations connected to fears of her father. She resides away from her sister in a residential therapeutic setting where she receives numerous medications and therapy, and she is assigned a personal aide; she is not yet able to address her sexual abuse due to her emotional instability. Her social worker and treatment team advised against any plan to reintroduce the mother into her life, believing visitation would be affirmatively harmful, as the mother had minimal contact with the child's therapist and service providers in the prior year and a half and had no contact with the girls since mid 2009. The evidence and her own testimony support the conclusion that the mother has no real understanding of the child's emotional trauma and needs, and that any contact could worsen her condition.

By all accounts, the younger child is making progress in a stable foster care family in Clinton County and moving toward being placed in mainstream grade-level classes. She continues with therapy to address improved but ongoing behavioral problems and her tendency to be withdrawn and anxious. The girls have regular supervised visitation with one another at the institution where the older child resides, and phone contact, which all providers highly recommended be continued despite the lengthy trip required of the younger child. While their visits are at times unsuccessful because the older child mistreats her younger sister, repeating a family pattern in which the younger child was openly disfavored, the consensus is that this relationship with face-to-face contact is important to the welfare of both

girls. However, the girls' counselors opposed resuming visits between the mother and the younger child since it could negatively affect the sibling relationship. Moreover, the mother has never called the younger child's teachers, counselors or the social worker to discuss how she is doing.

In light of the mother's failure to attend or successfully complete programs and services addressing her own mental health problems and parenting deficiencies and her failure to make any progress or to gain insight into the abuse suffered by the older child, the determination to continue the girls' placement with petitioner has a sound and substantial basis in the record (*see Matter of Elijah Q.*, 36 AD3d 974, 976 [2007], *lv denied* 8 NY3d 809 [2007]). Their "physical, mental and emotional well-being" and "best interests" clearly preclude their return to the mother at that juncture under any conceivable circumstances (*Matter of Brandon DD. [Jessica EE.]*, 75 AD3d at 816; *see* Family Ct Act § 1089 [d]).

Further, "based on compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the [girls'] welfare" (*Matter of Victoria X.*, 34 AD3d at 1118 [internal quotation marks omitted]), visitation was properly denied. Under the extreme circumstances presented, including the mother's ongoing contact with the older child's abuser and denial or minimization of his abuse or her role in it, her failure to make any effort for an extended period of time to educate herself as to the girls' well-being, needs and progress, the danger to the still-precarious but improving sibling relationship, and the mother's refusal to address the multiple serious underlying problems causing their removal, denial of all visitation was a provident exercise of discretion (*see Matter of Sullivan County Dept. of Social Servs. v Richard C.*, 260 AD2d 680, 682 [1999], *lv dismissed* 93 NY2d 958 [1999]).

Lahtinen, Kavanagh, McCarthy and Egan Jr., JJ., concur. Ordered that the orders are affirmed, without costs.