■ In the Matter of TIMOTHY R. PERRY, Respondent, v HELEN M. SURPLUS, Appellant. [976 NYS2d 707]—

Spain, J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered March 30, 2012, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child born in August 2011; they lived together until shortly before the child was born. Upon the birth of the child, the Broome County Department of Social Services (hereinafter DSS) received a State Central Registry report reflecting concerns about domestic violence and the mother's ability to care for the child. The mother consented to a safety plan with DSS in which the child would be discharged to the father's custody from the hospital. Thereafter, the father filed for sole custody of the child at the suggestion of DSS and the mother cross-petitioned for custody. DSS deemed the Central Registry report to be "indicated" based upon its investigation reflecting inadequate guardianship, the mother's mental health history and her prior neglect adjudications. Family Court then ordered a Family Ct Act § 1034 investigation, and a report was promptly filed with the court.

At the custody trial in late 2011 and early 2012, Diane Teed, the DSS child protective caseworker who conducted the Central Registry and Family Ct Act § 1034 investigations,[1] testified based upon, among other sources, her interviews of the parties, the mother's recent medical records, Broome County Family Court records, Tioga County Family Court records, and information gathered by DSS caseworkers from a Pennsylvania caseworker. Teed testified that the mother has three older children who were not in her custody, all of whom live with grandparents; the oldest child was adjudicated to have been neglected in Pennsylvania in 1994 and placed with paternal grandparents, the second child was adjudicated to be neglected in 1995 in Broome County Family Court based upon the mother's admission and placed with paternal grandparents, and the third was placed voluntarily in the custody of the maternal grandmother in 2008 pursuant to a safety plan with DSS. The mother's child protective history reflects extensive mental health treatment with hospitalizations and suicide attempts, borderline intelligence, and a history of mutual domestic

---

**1.** Teed testified that no neglect proceeding was commenced because both parties were cooperative.

violence with the father as well as substance abuse.[2] As a result, Teed urged that the mother's visitation with the child be supervised, but not by the father.

The father testified at trial that he also has five older children (ages 5 to 19) with whom he had weekly visitation at the time of trial, and he had achieved a cordial relationship with their mother, his ex-wife. His oldest, a daughter age 19, was a frequent visitor to his home and helped care for the child. He had an adjudication of neglect in Tioga County Family Court (2008-2009) and prior incidents of domestic violence with his ex-wife, which resulted in orders of protection (in 2003 and 2005) that had expired by the time of this trial. He had a three bedroom house where he resided with the child. He was employed as a skilled laborer until he was injured at work and let go, at which time he began collecting unemployment insurance, which was shortly after he assumed custody of the then-newborn child. He recounted incidents in which the mother had harmed herself or threatened to harm herself and their unborn child and engaged in bizarre behavior, sometimes for weeks at a time. He also asserted that, on one occasion, the mother tossed the child on the couch when she got mad at the father. He had no objection to the mother having supervised visitation with the child.

The mother testified that she lived in a one bedroom apartment and denied threatening to harm herself or the child. She accused the father of repeated domestic violence, neglect of the child while in his custody and poly-substance abuse. She admitted some substance abuse herself, including relapses since the birth of the child. She expressed her love for the child and desire to have custody of him. She also had been regularly exercising her visitation when allowed, and reported that the father had permitted her to be alone with the child on several occasions.

Family Court concluded that the father was the more fit parent and awarded sole custody of the child to the father subject to supervision over him and the child by DSS for one year. The court ordered that the mother have supervised visitation to be overseen by an adult other than the father. The mother now appeals.

---

2. We note that the mental health history is dated, from 1995, and no updates or current evaluations were requested or court ordered. Likewise, the parties were not ordered to undergo substance abuse evaluations despite evidence of such abuse by both. Teed testified that the parents were asked to complete drug evaluations, apparently as part of the Family Ct Act § 1034 investigation, but she did not have any results and it is not clear if they were completed.

Initially, we are unpersuaded by the sole appellate argument made by the attorney for the child that the mother's appeal from the award of custody to the father has been rendered moot by subsequent events, namely, the removal of the child from the father's custody by order of Family Court and his incarceration. Given that the mother's contentions on appeal, that the court should have awarded her custody, if successful, will "directly affect[ ]" her rights, her appeal from the award of custody to the father is not moot, notwithstanding that the custody award as to the father is no longer in effect (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]; *compare Matter of Anthony WW. [Karen WW.]*, 103 AD3d 941, 942 [2013], *lv denied* 21 NY3d 857 [2013]).

On the merits, we find that Family Court did not improvidently award custody to the father based upon the evidence then before the court which, at that time, supported the conclusion that it was in the child's best interests to be placed in the supervised custody of the father (*see Matter of Gordon v Richards*, 103 AD3d 929, 930 [2013]; *Matter of Edward V. v Crystal W.*, 45 AD3d 1213, 1215 [2007], *lv denied* 10 NY3d 703 [2008]). Here, the determination is supported by a sound and substantial basis in the record, and we accord deference to the court's credibility and factual determinations, in view of its ability to observe the testimony, particularly that of the parents (*see Matter of Darrow v Darrow*, 106 AD3d 1388, 1390 [2013]). The court considered all of the relevant factors raised by the evidence in this initial custody determination, including the "parents' ability to provide a stable home environment for the child, . . . the parents' past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (*Matter of Rundall v Rundall*, 86 AD3d 700, 701 [2011]; *see Matter of Casarotti v Casarotti*, 107 AD3d 1336, 1339 [2013], *lv denied* 22 NY3d 852 [2013]). Family Court's conclusions, based upon the evidence then before it, that the father was the more fit parent and that his past flaws were outweighed by his more recent positive lifestyle and willingness to provide a suitable home for his child, are supported in the record.

The mother's objections on appeal to the admission of certain testimony at trial on the ground that it constituted inadmissible hearsay are unpreserved for our review, as she did not raise these objections at trial, at a time when Family Court, the parties, DSS or the attorney for the child could have responded to them (*see* CPLR 5501 [a] [3]; *Matter of Telsa Z. [Denise Z.]*, 84 AD3d 1599, 1600 [2011], *lv denied* 17 NY3d 708 [2011]). More-

over, any hearsay error was harmless, in view of the overwhelming additional evidence supporting the court's custody determination, and the fact that the mother was not deprived of "fundamental fairness" (*Matter of Leon RR*, 48 NY2d 117, 124 [1979]; *accord Matter of Florence X.*, 75 AD2d 942, 943 [1980]). We add that given, among other considerations, recent developments with regard to the father, the mother should have received long-overdue current substance abuse and mental health evaluations, as well as a current assessment of her cognitive abilities and other services, with an eye toward conditioning her visitation on participation in such evaluations or treatment (*see Matter of Caccavale v Brown*, 271 AD2d 717, 719 [2000]), as appropriate, assuming she is participating in ongoing visitation with the child.

Rose, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.