# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  January 8, 2015                    517854
_____

In the Matter of DAMIAN D.
    and Another, Neglected
    Children.

CLINTON COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                    Respondent;

TRAVIS D.,
                    Respondent.

PATRICIA WW.,
                    Appellant.

(Proceeding No. 1.)                    OPINION AND ORDER
_____

In the Matter of DAMIAN D.
    and Another, Neglected
    Children.

CLINTON COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                    Respondent;

DIXIE D.,
                    Respondent.

PATRICIA WW.,
                    Appellant.

(Proceeding No. 2.)
_____


Calendar Date:  November 13, 2014

Before:  Peters, P.J., Lahtinen, Garry, Rose and Egan Jr., JJ.

_____

Michelle I. Rosien, Philmont, for appellant.

Van Crockett, Clinton County Department of Social Services, Plattsburgh, for Clinton County Department of Social Services, respondent.

Reginald H. Bedell, Elizabethtown, attorney for the children.

_____

Egan Jr., J.

Appeals (1) from two orders of the Family Court of Clinton County (Lawliss, J.), entered September 23, 2013, which issued orders of protection in favor of the subject children, and (2) from two orders of said court, entered October 15, 2013, which, among other things, granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to continue the placement of the subject children.

Respondent Travis D. (hereinafter the father) and Patricia WW. (hereinafter the mother) are the parents of Damian D. (born in 1997) and Dayinara D. (born in 1999). Pursuant to a posthearing order entered in May 2011, the father was awarded sole legal and physical custody of the children, and the mother was awarded visitation with the children on two consecutive weekends out of every three weekends – in addition to various holiday and school vacations. The mother testified that she exercised all of her visitations with Damian and Dayinara and that such visits went well until November 2012, at which time her three younger children (Damian and Dayinara's maternal half siblings) were removed from her home and placed in foster care. After that time, the mother continued to visit – unsupervised – with Damian, but Dayinara, whom the mother believed to be responsible for the maltreatment report that led to the underlying removal, elected not to participate in such visitations.

Thereafter, in April 2013, petitioner commenced the instant proceedings against the father and his wife, respondent Dixie D.

(hereinafter respondent), alleging that they had neglected Damian, Dayinara and Dakota D. (born in 2008) — the latter of whom was their child in common — by, among other things, allowing the children to reside in a house where methamphetamine was being manufactured. Pursuant to Family Ct Act § 1035 (d), the mother was notified of these proceedings and appeared — with counsel — as a "non-respondent parent." At the initial appearance in these matters, Family Court granted petitioner's application to place Damian, Dayinara and Dakota with Dakota's maternal grandparents and issued temporary orders of protection against the father and respondent.

As the initial appearance was concluding, Family Court, having apparently presided over a recent Family Ct Act article 10 hearing with respect to the mother's younger children and having concluded that supervised visitation as to those children was warranted, inquired, "Doesn't it seem logical to limit [the mother's] contact [with Damian and Dayinara] the same way that she has contact with the other children?" In response, counsel for petitioner pointed out the relevant procedural distinction — namely, that the mother's ongoing — and unsupervised — visitation with Damian and Dayinara was governed by a Family Ct Act article 6 order and was not the product of a Family Ct Act article 10 proceeding. The mother's counsel, noting that Damian and Dayinara were appreciably older than the mother's other children and, further, that the mother had been enjoying unsupervised visitations with Damian and Dayinara "the entire time" that the article 10 proceeding was pending as to their maternal half siblings, specifically opposed having the mother's visitations supervised by petitioner.[1] The attorney for the children agreed, indicating that Damian and Dayinara were "old enough in [his] estimation" to have unsupervised visitations with the mother and,

---

[1]  Perhaps seeing the handwriting on the wall, counsel for the mother thereafter remarked that Dakota's grandparents "would probably be appropriate supervisors" for such visitations. Viewing the colloquy as a whole, we do not deem counsel's statement to be the functional equivalent of the mother consenting to the imposition of supervised visitation (cf. Matter of Spencer v Spencer, 85 AD3d 1244, 1244-1245 [2011]).

in any event, expressly opposed having Dakota's grandparents act as supervisors. Nonetheless, Family Court – sua sponte, without prior notice and based solely upon the neglect proceeding involving the mother's three younger children – issued a temporary order of protection requiring the mother to stay at least 1,000 feet away from Damian and Dayinara unless supervised by one of petitioner's employees.

A fact-finding hearing ensued, at the conclusion of which Family Court found that the father and respondent had neglected the subject children.[2] Family Court then held a combined dispositional and permanency hearing, at which the mother appeared and testified as to her visitations with Damian and Dayinara. Thereafter, Family Court – quoting verbatim from the permanency hearing report prepared by one of petitioner's caseworkers – issued two combined dispositional and permanency orders that, insofar as is relevant here, awarded the mother supervised visitations with Damian and Dayinara "at least twice per calendar month." In conjunction therewith, Family Court also issued separate no-contact orders of protection in favor of Damian and Dayinara – precluding the mother from having any contact with those children unless supervised by petitioner. The mother now appeals from each of the aforementioned orders.

Preliminarily, inasmuch as the underlying orders of protection expired by their own terms in April 2014 (and apparently have been superseded by subsequent orders), the mother's appeals therefrom are moot and must be dismissed (see Matter of Samantha H., 52 AD3d 894, 894 [2008]; cf. Matter of Cheryl L. v Scott L., 68 AD3d 1381, 1381 [2009]). As for the appeals from the combined dispositional and permanency orders, according to counsel for the mother, a subsequent permanency hearing was conducted in March 2014, at which time the mother consented to entry of an order continuing the supervised visitation provisions previously imposed upon her. However, inasmuch as the supervised visitation restrictions remain in effect, the fact that the mother acquiesced to the disputed

_____

    [2] The mother and counsel appeared at, but did not participate in, the fact-finding hearing.

restrictions in order to enjoy <u>any</u> visitation with Damian and Dayinara "does not foreclose her from contesting the legality of a condition which still impacts her" (<u>Matter of Lauren L. [Cassi M.]</u>, 79 AD3d 1193, 1194-1195 [2010]).  Accordingly, the mother's appeals from the underlying dispositional/permanency orders are not moot (<u>see</u> <u>id.</u> at 1194).[3]

The crux of the mother's argument on appeal is that Family Court deprived her of due process when, in the context of the instant Family Ct Act article 10 proceedings, to which she is not a named respondent, the court sua sponte modified the terms of the 2011 Family Ct Act article 6 order by significantly curtailing the frequency of her visitations with Damian and Dayinara and requiring that any such visits be supervised.  In this regard, there is no question that modification of a Family Ct Act article 6 custody order requires "a full and comprehensive hearing" at which a parent is to be afforded "a full and fair opportunity to be heard" (<u>Matter of Middlemiss v Pratt</u>, 86 AD3d 658, 659 [2011] [internal quotation marks and citations omitted; <u>accord</u> <u>Matter of Jeffrey JJ. v Stephanie KK.</u>, 88 AD3d 1083, 1084 [2011]).  There also is no question that the notice provided to the mother as a non-respondent parent pursuant to Family Ct Act § 1035 (d) – although apprising her of the right to "enforce" her Family Ct Act article 6 visitation rights in the context of the Family Ct Act article 10 proceedings against the father and respondent – in no way advised the mother that her visitation rights would be at issue during the course of, or could be restricted as a result of, the instant neglect proceedings. Further, it is abundantly clear that, in light of the "limited statutory role [of] and narrow rights" afforded to a non-respondent parent under Family Ct Act § 1035 (d), the statute cannot serve as a "back-door vehicle" via which a court may dispense with notice and due process requirements and take affirmative action against a non-respondent parent who has not

_____

[3]  Were we to reach a contrary conclusion in this regard, we nonetheless would address the merits given that the mother has raised a due process challenge to the orders imposing supervised visitation (<u>see</u> <u>Matter of Telsa Z. [Denise Z.]</u>, 84 AD3d 1599, 1600 n 2 [2011], <u>lv denied</u> 17 NY3d 708 [2011]).

been formally charged with wrongdoing as to the affected children (Matter of Telsa Z. [Rickey Z.–Denise Z.], 71 AD3d 1246, 1251 [2010]).[4]

Assuming, without deciding, that (1) Family Court did not misuse the notice provisions of Family Ct Act § 1035 (d) by making factual findings against the mother and affirmatively restricting her visitation with Damian and Dayinara, (2) the mother – in the context of the combined dispositional and permanency hearing – received the full evidentiary hearing to which she was entitled (cf. Matter of Carolyn S. v Tompkins County Dept. of Social Servs., 80 AD3d 1087, 1088 [2011]), (3) by appearing and testifying at such hearing, the mother received her full measure of due process, (4) the mother was not prejudiced by the lower evidentiary standard applicable to dispositional hearings (compare Family Ct Act § 1046 [c], with Family Ct Act § 1082 [4]), and (5) the finding of neglect as to the mother's three other children constituted a sufficient change in circumstances to warrant modification of the prior visitation provisions with respect to Damian and Dayinara, we nonetheless are persuaded that Family Court's decision to impose supervised visitation as to Damian and Dayinara lacks a sound and substantial basis in the record. Accordingly, that portion of the underlying dispositional and permanency orders cannot stand.

As for the grounds upon which Family Court elected to impose supervised visitation, although Family Court indeed was entitled to take judicial notice of the three neglect proceedings brought against the mother with respect to Damian and Dayinara's maternal half siblings, two of the three proceedings predated the 2011 custody order wherein Family Court – following a hearing – granted the mother (unsupervised) visitation with Damian and Dayinara. Additionally, nothing in the record suggests that

---

[4] Although we are mindful that Matter of Telsa Z. (Rickey Z.–Denise Z.) (supra) is distinguishable on the facts, our decision nonetheless stands for the general proposition that a court cannot utilize the provisions of Family Ct Act § 1035 (d) to circumvent the due process to which a parent otherwise would be entitled before being deprived of custody or visitation.

derivative findings of neglect were sought with respect to Damian and Dayinara in any of the neglect proceedings brought against the mother. To the extent that Family Court further relied upon the mother's allegedly unaddressed mental health and anger management issues, as well as her purported lack of stable housing, these conclusory and unsubstantiated hearsay statements — taken verbatim from the permanency hearing report prepared by one of petitioner's caseworkers — are not, to our analysis, the type of evidence that may be invoked to significantly curtail the mother's preexisting visitation rights with Damian and Dayinara. Finally, the sole witness to testify at the combined hearing was the mother, who detailed her visitation history with Damian and Dayinara, revealed that she regularly exercised her visitation rights[5] and indicated that such visits generally went well. Although the mother acknowledged that she and her teenage children did not always see eye to eye, the record as a whole fails to establish that affording the mother unsupervised visitation with Damian and Dayinara — who were 16 years old and 15 years old, respectively, at the time of the hearing — "would be inimical to the child[ren]'s welfare" (Matter of Fish v Fish, 112 AD3d 1161, 1162 [2013] [internal quotation marks and citation omitted]). As a result, the underlying dispositional and permanency orders must be modified, and this matter is remitted to Family Court for further proceedings.

Peters, P.J., Lahtinen, Garry and Rose, JJ., concur.

---

[5]  As noted previously, there was a gap in the mother's visitations with Dayinara following the removal of the mother's younger children in November 2012.

ORDERED that the appeals from the orders of protection entered September 23, 2013 are dismissed, as moot, without costs.

ORDERED that the orders entered October 15, 2013 are modified, on the law, without costs, by reversing so much thereof as provided for supervised visitation for Patricia WW.; matter remitted to the Family Court of Clinton County for further proceedings not inconsistent with this Court's decision and, pending said proceedings, the visitation terms of said orders shall remain in effect on a temporary basis; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court