*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: July 9, 2015                    517835
_____

In the Matter of WALTER
    SPARBANIE,
                    Appellant,

        v                                    MEMORANDUM AND ORDER

LINDSAY REDDER,
                    Respondent.

(And Two Other Related Proceedings.)
_____

Calendar Date:   June 1, 2015

Before:   Lahtinen, J.P., Lynch, Devine and Clark, JJ.

_____

        Carman M. Garufi, Binghamton, for appellant.

        Paul R. Corradini, Elmira, for respondent.

        Emily Karr-Cook, Elmira, attorney for the children.

_____

Lynch, J.

        Appeal from an order of the Family Court of Chemung County
(Brockway, J.), entered October 2, 2013, which, among other
things, partially denied petitioner's application, in a
proceeding pursuant to Family Ct Act article 6, to modify a prior
order of visitation.

        Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the parents of two children (born in
2009).  In January 2013, the father filed a petition effectively
seeking, among other things, modification of a prior stipulated
order issued five days earlier that provided visitation for the

father "as the parties may agree." Following a trial, Family Court issued an order devising a schedule of visitation for the father entitling him to supervised visitation for two hours every other Sunday, plus certain holidays. The father now appeals.

The father's sole contention on appeal is that Family Court erred in denying him unsupervised visitation. In order to modify a visitation order, a party must demonstrate a change in circumstances that necessitates a modification to ensure the best interests of the children (see Matter of Ford v Baldi, 123 AD3d 1399, 1400 [2014]; Matter of Angela F. v Gail WW., 113 AD3d 889, 890 [2014]). As neither the mother nor the attorney for the children disputes the court's finding that the unworkability of the prior visitation order constituted the requisite change in circumstances, the only issue before this Court is whether the visitation schedule is in the best interests of the children (see Matter of Chris X. v Jeanette Y., 124 AD3d 1013, 1014 [2015]). While "[e]xpanded visitation is generally favorable absent proof that such visitation is inimical to [the] child[ren]'s welfare" (Matter of Fish v Fish, 112 AD3d 1161, 1162 [2013] [internal quotation marks and citations omitted]; see Matter of Damian D. [Patricia WW.], 126 AD3d 12, 18 [2015]), "supervised visitation may be warranted if unsupervised time with the children could be detrimental to the child[ren]'s safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Raychelle J. v Kendell K., 121 AD3d 1206, 1207-1208 [2014] [internal quotation marks and citation omitted]; accord Matter of Taylor v Fry, 63 AD3d 1217, 1218-1219 [2009]). In this regard, we will only disturb a decision to order supervised visitation when it lacks a sound and substantial basis in the record (see Matter of Raychelle J. v Kendell K., 121 AD3d at 1207; Matter of Christina KK. v Kathleen LL., 119 AD3d 1000, 1003 [2014]).

The testimony adduced at trial provided ample support for Family Court's decision to restrict the father to supervised visitation. The father stated that he was in jail from December 2011 until November 2012, during which time he did not see his children, having rejected an offer from his caseworker to visit with them. The children's former foster mother testified that the father only saw his children on five or six occasions from

November 2010 until his incarceration.  Between January 2013 and the first day of the trial in May 2013, the father only met with the children once during a supervised visit, at which he stayed for just five minutes and only interacted with one of the children.  In response to the attorney for the children's suggestion that he could have supervised visitation at a family resource center, the father stated, "[M]aybe I should go [there] to visit my children, but why should I?  What did I do wrong to have to do that?"  In addition, the father declined Family Court's offer to schedule a supervised visit, between the first and second days of the trial, preferring instead to "just go through the process."  Importantly, the father acknowledged that the children were not even aware that he is their biological father.  Finally, as to his fitness as a parent, the father indicated that he has very limited financial resources and a personality disorder that has apparently gone untreated.

The father clearly evinced his unwillingness to parent by electing not to visit with his children both during his incarceration and, with one minor exception, after he commenced the initial proceeding (see Matter of Klee v Schill, 95 AD3d 1599, 1601 [2012]; Matter of Russell v Simmons, 88 AD3d 1080, 1081 [2011]).  Considering the children's unfamiliarity with the father – engendered by his limited contact with them – and his refusal to meaningfully participate in anything less than unsupervised visitation, we conclude that Family Court providently exercised its discretion in requiring that the father's visitation with his children be supervised (see Matter of Raychell J. v Kendell K., 121 AD3d at 1208; Matter of Burrell v Burrell, 101 AD3d 1193, 1195 [2012]).

Lahtinen, J.P., Devine and Clark, JJ., concur.

ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court