Matter of Jemar H. v Nevada I. (2020 NY Slip Op 02297)





Matter of Jemar H. v Nevada I.


2020 NY Slip Op 02297


Decided on April 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 16, 2020

526177

[*1]In the Matter of Jemar H., Appellant,
v
Nevada I., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)

Calendar Date: February 19, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


Jacob Vredenburgh, Wynantskill, for appellant.
Dennis B. Laughlin, Cherry Valley, for respondent.
Pamela Doyle Gee, Big Flats, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Chemung County (Tarantelli, J.), entered June 12, 2017, which, among other things, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Jemar H. (hereinafter the father) and Nevada I. (hereinafter the mother) are the parents of a child (born in 2015). In July 2016, after the father was convicted of various weapon charges and sentenced to an aggregate prison term of 12 years, Family Court entered an order upon the parties' consent, which granted the mother sole legal and primary physical custody of the child and accorded the father monthly prison visits and "reasonable" phone calls, pictures and letters. Shortly thereafter, the father was transferred from Chemung County Jail to Clinton Correctional Facility, roughly 5½ hours away from the mother's home in Chemung County. In October 2016, based upon allegations that the mother had not brought the child to visit him since entry of the July 2016 consent order and that the mother had discontinued other contact between him and the child, the father filed a petition to enforce the prior order. Two months later, the father filed a modification petition, seeking to restore his "rights" to the child. The mother subsequently filed a modification petition in which she alleged that prison visits were no longer in the child's best interests.
Following a fact-finding hearing,[FN1] Family Court dismissed the father's enforcement petition, finding that the mother had violated the prior order, but that the violation was not willful. As to the modification petitions, Family Court found that there was a change in circumstances warranting inquiry into the best interests of the child and, upon such inquiry, found that mandated prison visits with the father were not in the child's best interests at that time. The court, however, provided that the father could have "any in[-]person visitation as the parties agree." Additionally, the court directed the mother to write a letter to the father every other month specifically addressing the child's medical, educational and social status, together with a picture of the child and any artwork or crafts made by the child. Family Court further granted the father once weekly phone calls with the child, with such phone calls to be screened by the mother or the child's day care provider, and indicated that the father could send the child "appropriate" letters, cards or crafts, subject to certain conditions. The father appeals.
The father argues that there was no basis for Family Court's determination to eliminate the monthly prison visits provided to him under the July 2016 consent order. A party seeking to modify an existing custody order must demonstrate that there has been a change in circumstances since entry of the prior order that, if established, then warrants an inquiry into whether the best interests of the child would be served by modifying the existing order (see Matter of Nathaniel V. v Kristina W., 173 AD3d 1308, 1309 [2019]; Matter of Naquan V. v Tia W., 172 AD3d 1467, 1468 [2019]). Visitation with a noncustodial parent, even if he or she is incarcerated, is presumed to be in the best interests of the child (see Matter of Granger v Misercola, 21 NY3d 86, 91 [2013]; Matter of Benjamin OO. v Latasha OO., 170 AD3d 1394, 1395 [2019], lv denied 33 NY3d 909 [2019]). To rebut that presumption, the custodial parent must demonstrate that visitation with the noncustodial parent would, under all of the circumstances, be harmful to the child's welfare or contrary to his or her best interests (see Matter of Leary v McGowan, 143 AD3d 1100, 1101 [2016]; Matter of Kadio v Volino, 126 AD3d 1253, 1254 [2015]). "The propriety of visitation is left to the sound discretion of Family Court, guided by the best interests of the child, and its decision will not be disturbed where it is supported by a sound and substantial basis in the record" (Matter of Samuels v Samuels, 144 AD3d 1415, 1415-1416 [2016] [internal quotations marks, brackets and citations omitted]; accord Matter of Dharamshot v Surita, 150 AD3d 1436, 1437 [2017]).
The evidence established that, after entry of the July 2016 order, the father was transferred to a prison facility roughly 350 miles from the child's residence, requiring an approximately 11-hour roundtrip car ride for the child each visit. The mother testified that, although a diagnosis cannot be confirmed until the child reaches the age of three, the child is believed to be on the autism spectrum and had been referred to, and was engaging in, early intervention services. The mother testified that the child was nonverbal, was exhibiting aggressive behavior and would thrash, scratch his face and hurt himself during car rides. The testimony and documentary evidence, as credited by Family Court, also demonstrated that, with respect to the mother, the father was unable "to restrain himself in regards to inappropriate comments and temperament," and that the parents' relationship had deteriorated as a result. The mother further testified that the father did not provide her with financial support and that she lacked the financial means to make the lengthy trips to the father's prison facility. Although the father proposed that certain paternal family members could facilitate the child's prison visits, the testimony established that the young child was unfamiliar with those individuals.
According deference to Family Court's credibility determinations, we agree with Family Court that the requisite change in circumstances was established by the father's transfer to a correctional facility roughly 5½ hours away from the child's home, the child's emerging developmental and behavioral issues, the "growing animosity" between the parents and the burden of monthly visits on the mother (see Matter of Telfer v Pickard, 100 AD3d 1050, 1051 [2012]). Further, upon review of the foregoing evidence, particularly the testimony regarding the child's inability to tolerate car trips and the father's history of directing inappropriate comments toward the mother, we find that a sound and substantial basis exists in the record to conclude that requiring prison visits would be both harmful to the child's welfare and not in the child's best interests at this time (see Matter of Ruple v Harkenreader, 99 AD3d 1085, 1086-1087 [2012]; Matter of Williams v Tillman, 289 AD2d 885, 886 [2001]).[FN2] Accordingly, we will not disturb Family Court's decision to modify the July 2016 order by discontinuing the requirement of monthly prison visits and instead providing that any visits would be as the parties may agree.
We similarly find no basis upon which to disturb Family Court's determination that the mother violated the prior custody order, but that such violation was not willful. It was undisputed that the mother did not comply with the provision of the July 2016 order requiring her to bring the child for monthly prison visits with the father. However, Family Court credited the mother's testimony that her failure to comply was due to a combination of factors, including the child's emerging developmental delays and behavioral issues, a lack of financial resources and the father's inappropriate behavior and comments toward her. Deferring to Family Court's credibility determinations, there is ample evidence to support the conclusion that the mother did not willfully violate the prior custody order and, thus, we cannot say that Family Court abused its discretion in so finding (see Matter of James XX. v Tracey YY., 146 AD3d 1036, 1038 [2017]; Matter of Constantine v Hopkins, 101 AD3d 1190, 1191-1192 [2012]; Matter of Omahen v Omahen, 64 AD3d 975, 976-977 [2009]).
The father further argues that Family Court violated his due process rights by continuing with the fact-finding hearing in his absence after his telephone line was disconnected. However, the father did not raise a due process argument when he subsequently appeared — telephonically — for the court's bench decision and, therefore, his argument is unpreserved for our review (see Matter of Telsa Z. [Denise Z.], 84 AD3d 1599, 1600 [2011], lv denied 17 NY3d 708 [2011]; Matter of Gordon L. v Michelle M., 296 AD2d 628, 630 [2002]). In any event, were this issue properly preserved, we would find no due process violation, as the record supports Family Court's conclusion that the father "unilaterally concluded his telephonic appearance and his testimony prior to completion of his cross-examination." Indeed, the record reflects that the disconnection occurred after the father became agitated with the questions posed to him and after Family Court had repeatedly advised the father that he was required to answer the questions. When Family Court attempted to reestablish the father's telephonic appearance, an employee at the prison facility informed the court that the father had returned to his cell, apparently after having stated that he was "done." The matter thereafter proceeded in the father's absence, with his interests represented by his attorney. Accordingly, if the father's due process argument were preserved, we would find that there was no due process violation, given that he waived his right to be present by voluntarily disengaging from the proceeding and that his attorney thereafter continued to advocate on his behalf (see Matter of Bagot v McClain, 148 AD3d 882, 883 [2017]; Matter of Juleeana ZZ., 37 AD3d 995, 996 [2007], lv denied 8 NY3d 814 [2007]; Matter of Konard M., 257 AD2d 919, 920 [1999]).
As a final matter, we find no merit in the father's contention that he received ineffective assistance of counsel. Viewing the totality of the circumstances, we are satisfied that the father received meaningful representation (see Matter of Amanda YY. v Ramon ZZ., 167 AD3d 1260, 1263 [2018]; Matter of Chasity CC. v Frederick DD., 165 AD3d 1412, 1417 [2018]). To the extent that we have not addressed any of the father's arguments, they have been reviewed and found to be unavailing.
Garry, P.J., Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: A Lincoln hearing was neither requested nor conducted given the child's young age and speech delays.

Footnote 2: We note that, in Family Court and on appeal, the attorney for the child agreed with the mother that prison visits were not in the child's best interests.